IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

RICHARD B,

        Plaintiff,

ANDREW M. SAUL, Commissioner of Social Security,[1]

        Defendant.

Civil Action No. 3:19-CV-0053 (DEP)

---

APPEARANCES:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM
1500 East Main Street
Endicott, NY 13761

FOR DEFENDANT

HON. GRANT C. JAQUITH
United States Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OF COUNSEL:

PETER A. GORTON, ESQ.

LISA SMOLLER, ESQ.
Special Assistant U.S. Attorney

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

---

[1] Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Acting Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew M. Saul took office as Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on March 11, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: March 13, 2020
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RICHARD B.,

                              Plaintiff,

vs.                                          3:19-CV-53

ANDREW M. SAUL,
Commissioner of Social Security,

                              Defendant.

-----------------------------------------------------------x
```

*DECISION* - March 11, 2020

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding

<u>APPEARANCES</u> (by telephone)

For Plaintiff:     LACHMAN, GORTON LAW FIRM
                   Attorneys at Law
                   1500 East Main Street
                   Endicott, NY 13761
                     BY:  PETER A. GORTON, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   J.F.K. Federal Building
                   15 New Sudbury Street
                   Boston, MA 02203
                     BY:  LISA SMOLLER, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1    THE COURT: All right. Thank you both for
2 excellent presentations.
3    Plaintiff has commenced this proceeding under 42,
4 United States Code, Section 405(g) and 1383(c)(3) to
5 challenge a determination by the Commissioner of Social
6 Security denying plaintiff's application for benefits. The
7 background is as follows.
8    The plaintiff was born in July of 1976; is 43 years
9 of age. He was 38 years old at the time of his application
10 on April 28, 2015. Plaintiff is 5-foot, 11-inches in height
11 and weighs approximately between 190 and 200 pounds.
12    Plaintiff lives in Binghamton, New York, in a house
13 with his ex-girlfriend and a dog, as well as a son, who was
14 19 years old at the time of the hearing in this matter on
15 February 14, 2018.
16    Plaintiff achieved a GED. While he was in school
17 he attended regular classes. He also has one semester of
18 college education. Plaintiff is right-handed. He has a
19 driver's license. Plaintiff has no significant work history.
20 He stopped work in December of 2006. In 2005 he was doing
21 apartment and real estate maintenance. In 2005 and 2006 he
22 was an installation tech and a plumber's helper in an HVAC
23 and plumbing situation.
24    Physically plaintiff suffers from several
25 conditions that have been diagnosed, some or all of which

have been attributed to a snowboard accident in 2000. He suffers from chronic pain syndrome, fibromyalgia, right shoulder pain, left thigh pain, left leg iliotibial band syndrome, cervical radiculopathy, cervicalgia, lower back pain and migraines. He has treated with Dr. Keith Nichols, LCSW Barry Schecter one to two times a month, and Dr. Paul Dura, a rheumatologist.

Mentally plaintiff has had issues most of his life. He had several periods of hospitalization as a youth and he was sexually abused as a child. He suffers from major depressive disorder, post-traumatic stress disorder, rule out intermittent explosive disorder, bipolar disorder, generalized anxiety disorder, paranoia, history of poly-substance abuse and cannabis use. He claims to have been drug free since 2012. He is still being drug tested. He has been prescribed over time several medications, including Carvedilol, Flexeril, Naratripline, Seroquel, Suboxone, Topamax, Clonopin, Amitriptyline, and he has tried Gabapentin.

The plaintiff is a smoker. He smokes approximately four cigarettes per day. He occasionally uses marijuana and alcohol. Plaintiff was convicted in 2004 of drug possession and received two years of probation as a sentence.

In terms of activities of daily living, plaintiff does some cooking, cleaning, laundry. He does not shop. He

1  does watch television, listen to the radio.  He does some
2  child care.  He plays video games.  And he likes as a hobby
3  blowing glass.
4       The background is as follows.  Plaintiff initially
5  applied for and was denied benefits on April 27, 2012 and
6  November 6, 2014.  That's at page 84 of the Administrative
7  Transcript.  On September 28, 2015 plaintiff applied for
8  Title XVI Supplemental Security Income benefits, alleging an
9  onset date of March 30, 2012.  He claimed that he suffers
10 from crushed disc in neck and lower back, depression,
11 anxiety, panic and rage disorder, agoraphobia, pain in the
12 back, pain in the neck, pain in the right arm, numbness in
13 the arms and neck.  He stated in support of his application,
14 "I don't go outside or deal with the public, I get very
15 agitated and violent, migraines and insomnia."
16      A hearing was conducted to address plaintiff's
17 application for benefits on February 14, 2018 by
18 Administrative Law Judge Kenneth Theurer.  On March 1, 2018
19 ALJ Theurer issued an unfavorable decision finding that the
20 plaintiff was not disabled at the relevant times and,
21 therefore, ineligible for benefits.  That became a final
22 determination of the Agency on November 29, 2018, when the
23 Social Security Administration Appeals Council denied
24 plaintiff's application for review.
25      In his decision ALJ Theurer applied the familiar

1　five-step sequential test for determining disability.

2　　　　At step one he determined plaintiff had not engaged
3　in substantial gainful activity since the date of his
4　application for benefits, which I misstated.  The application
5　actually was April 28, 2015.

6　　　　At step two he concluded that plaintiff suffers
7　from severe impairments that impose more than minimal
8　limitations on his ability to perform basic work functions,
9　including degenerative disc disease of the lumbar spine,
10　cervical spine disorder, post-traumatic stress disorder,
11　depressive disorder, anxiety disorder, and fibromyalgia.

12　　　　At step three he concluded that plaintiff's
13　conditions do not meet or medically equal any of the listed
14　presumptively disabling conditions set forth in the
15　Commissioner's regulations, specifically considering listings
16　1.04, 12.04, 12.06 and 12.15.

17　　　　ALJ Theurer next determined that plaintiff retains
18　the residual functional capacity to lift and carry 20 pounds,
19　frequently lift and carry 10 pounds, sit for up to six hours,
20　stand or walk for approximately six hours in an eight-hour
21　workday with normal breaks.  He included several additional
22　limitations to address both the physical and mental
23　conditions suffered by the plaintiff, which I'll discuss more
24　comprehensively in a moment.  Applying that RFC finding, he
25　determined at step four that plaintiff had not engaged in any

significant past relevant work and, therefore, proceeded to step five.

At step five ALJ Theurer concluded that if plaintiff were capable of performing a full range of light work, a finding of no disability would be directed by Medical-Vocational Guideline Rule 202.20. He concluded, however, that because of the additional limitations that eroded the job base on which the grids are predicated, that a vocational expert testimony was required. Based on that testimony, he concluded that plaintiff is capable of performing jobs that are available in the national economy, including, for example, a photocopy machine operator, a sewing machine operator, and an office helper, and, therefore, concluded that plaintiff was not disabled at the relevant times.

As you know, my task is limited and the standard that I apply is exceedingly deferential. I must determine whether correct legal principles were applied and the determination is supported by substantial evidence. Substantial evidence is defined as such evidence as a reasonable mind would find sufficient to support a conclusion. It is, as the Second Circuit noted in *Brault versus Commissioner*, an exceedingly heightened standard, higher than clear error. In *Brault* the Second Circuit noted that a finding of fact by an ALJ can only be rejected if a

1  reasonable fact-finder must conclude the opposite.
2          The plaintiff has raised several contentions in
3  support of his challenge to the determination.  He does not
4  in his brief challenge the physical components of the
5  residual functional capacity finding, but does very much
6  challenge the mental components and also the on-task and
7  attendance facet of the RFC, the ability to maintain a
8  schedule.
9          He alleges improper assessment of the limitation on
10 interaction with others and the failure to limit contact with
11 supervisors and co-workers.  He challenges the failure to
12 credit uncontradicted opinions regarding workplace and
13 attendance.  He challenges the failure of the Administrative
14 Law Judge to consider plaintiff's history of outbursts.  And
15 he challenges the weight given to the various opinions,
16 including the fact that most reliance is placed upon
17 non-examining physician Dr. Brown.
18         In terms of interacting with others, the residual
19 functional capacity does include limitations that address
20 that.  At page 21 the Administrative Law Judge notes that
21 plaintiff can relate to and interact with others to the
22 extent necessary to carry out a simple task, but should avoid
23 work requiring more complex interaction or joint effort to
24 achieve a work goal.  He should have no more than incidental
25 contact with the public, where incidental is defined as more

than never and less than occasional, and by which is meant the job should not involve any direct interaction with the public but the claimant does not need to be isolated away from the public. There are opinions in the record addressing interaction with others. LCSW Schecter concluded that at page 558 plaintiff's ability to interact appropriately with the general public is extremely limited, his ability to accept instructions and respond appropriately to criticism from supervisors is extremely limited, and his ability to get along with co-workers is extremely limited.

The opinion from the Broome County Social Services person who reviewed determined that plaintiff had non-exertional limitations, including in responding appropriately to supervision and co-workers in work situations. That's at page 372. Dr. Slowik, the examining consultative examiner, at page 357 found that plaintiff's ability to relate adequately with others is moderately to markedly limited. Dr. Brown addressed it at page 84 and determined that relating to others is moderately to markedly limited, but found that plaintiff is capable of a simple job not working closely with others.

The ALJ did, as I just read, limit plaintiff's abilities -- placed a limitation on interaction with supervisors and co-workers, although it's not directly phrased in that way. The cases cited by the plaintiff I find

are distinguishable. I've reviewed them. And, in particular, the case of *Little versus Commissioner of Social Security*, 780 F.Supp.2d 1143 from the District of Oregon, 2011. In that case there was no limitation at all with regard to co-workers and supervisors; the limitation only applied to interaction with the public.

In my view, the limitations contained in the RFC related to interacting with others is supported by Dr. Brown. Dr. Brown is an acceptable medical source whose opinions can constitute substantial evidence. The real difference in this case and many others is that there is no opinion from a treating source who is deemed an acceptable medical source, so Dr. Brown's non-examining opinion is not being elevated over a treating source from an acceptable medical source. The ALJ did account for some of the limitations set forth in Dr. Slowik's opinions. The determination also draws some support from the Broome County Social Security source.

Admittedly, Counselor Schecter had a very different view, but he is not an acceptable medical source, or was not at the time, and it is for the ALJ under *Veino* to weigh competing opinions. I note that the bulk of unskilled work deals with things and not people or data, as demonstrated in 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 202.00(g), and Social Security Ruling 85-15. I also note that the Dictionary of Occupational Titles entries for the three jobs

1  identified show that the interaction required is minimal,
2  that the people rating of each of those three is 8.  And I
3  also note that the training and probationary period for all
4  three is SVP II requiring between a short demo and one month
5  training and probation.  And in the end it is plaintiff's
6  burden to demonstrate that he is unable to interact at all
7  beyond the limitations set forth in the RFC.
8        In terms of work pace and attendance, Dr. Slowik
9  indicated a moderate to marked limitation on ability to
10 maintain a regular schedule, at 357.  LCSW Schecter indicated
11 plaintiff would be off task more than 33 percent of the time
12 and absent three or more days per month, at 559.  Dr. Brown
13 did indicate moderate limitation in the ability to perform
14 activities within a schedule, maintain a regular attendance,
15 be punctual, and the ability to complete a normal workday and
16 workweek without interruption from physical symptoms.
17        The ALJ rejected Dr. Slowik's opinion and
18 articulated reasons for doing that at pages 26 and 27.  He
19 also rejected LCSW Schecter's opinions as not coming from an
20 acceptable medical source and not supported, as well as being
21 speculative.  The opinion of Dr. Brown indicates a moderate
22 limitation but states that plaintiff is still able to perform
23 simple work and to maintain a schedule, at page 84.
24 Substantial evidence supports that and ALJ Theurer is proper
25 to rely on the opinions of Dr. Brown.  So I find on that

1  issue that the issue was properly considered and the opinions
2  of Dr. Slowik and LCSW Schecter containing more limiting
3  situations in this regard were properly rejected.
4      In terms of outbursts, there is no question there
5  is some evidence of anger, mood swings and outbursts, but
6  most of those come during sessions where one expects that
7  emotions are piqued during counseling sessions.  There is no
8  showing that it occurred on a sustained basis.  It's
9  plaintiff's burden to show that that should have been
10 accounted for in the residual functional capacity, and I find
11 that burden was not carried.
12      In terms of weighing the medical opinions,
13 Dr. Brown's was clearly given the most weight.  His opinion
14 was properly analyzed.  I note that ALJ Theurer did go
15 through carefully the history of plaintiff's medical
16 treatment, including his mental health treatment.  At pages
17 24 and 25 noted the waxing and waning, noted many instances
18 where it was referenced that his condition was stable, that
19 he denied symptoms, and that his situation was being handled
20 through the use of medication.
21      I agree that much of plaintiff's mental health
22 treatment occurred after Dr. Brown rendered his opinion;
23 however, I didn't see any indication in going through the
24 records that plaintiff's condition, which admittedly waxed
25 and waned, was significantly deteriorated after Dr. Brown

1  rendered his opinion.  It is noted that Dr. Brown is a state
2  agency consultant, who by regulation is considered to have
3  program expertise and can be relied on.  The reference to
4  Dr. Brown and the reliance on Dr. Brown in my view is
5  supported by substantial evidence.  It is the ALJ under *Veino*
6  who has the ability to weigh competing opinions.
7       I note that *Quinn*, the case relied on by the
8  plaintiff, was a case where -- and I'll get you that
9  citation.  *Quinn v. Colvin*, 2016 WL 7013471, from the Middle
10 District of Pennsylvania.  The District Judge in that case,
11 District Judge Nealon, relied on Third Circuit precedent.  In
12 this case I did not, again, find any significant
13 deterioration in post October 2015 notes.  Under *Camille*, it
14 was therefore proper for the ALJ to rely on -- under *Camille*
15 *versus Colvin*, 652 Fed. Appx. 25, from the Second Circuit
16 2016, it was proper for the ALJ to rely on Dr. Brown even
17 though there was post opinion treatment.  Dr. Brown's opinion
18 was based on Dr. Slowik and other evidence.  He had at least
19 one note from Dr. Nichols.  He also reviewed plaintiff's
20 activities of daily living.  And the bottom line is plaintiff
21 has been unable to show that no reasonable fact-finder would
22 have reached the same conclusion as the Administrative Law
23 Judge when considering Dr. Brown's opinions.
24      As I indicated previously, LCSW Schecter's opinion
25 was rejected by the ALJ as lacking in support from treatment

1  notes.  There were, as the ALJ noted, few abnormal status
2  findings, no testing or complete mental status exam was
3  given, and his opinions concerning attendance and absenteeism
4  were speculative.
5         So, in conclusion, I find that the reliance on
6  Dr. Brown's opinions is supported by substantial evidence and
7  supports the residual functional capacity, which, in turn,
8  therefore, is supported by substantial evidence.
9         At step five the Commissioner carried his burden by
10 posing a hypothetical to a vocational expert which was based
11 on the residual functional capacity finding, and with the
12 vocational expert's testimony, the Commissioner carried his
13 burden of establishing the existence of work that plaintiff
14 is able to perform in the national economy.
15        So, I will grant judgment on the pleadings to the
16 defendant and dismiss plaintiff's complaint.
17        Again, thank you both for excellent presentations.
18 I hope you have a good day.
19                  *           *           *

C E R T I F I C A T I O N

      I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                              *Eileen McDonough*
                              _____
                              EILEEN MCDONOUGH, RPR, CRR
                              Federal Official Court Reporter